**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

FIRST MIDWEST BANK, AS SUCCESSOR-IN-INTEREST TO BRIDGEVIEW BANK GROUP,

              Plaintiff,

    v.

LEO J. GOVONI, MARK BERLIN

              Defendants.

Case No.

## COMPLAINT AT LAW

Plaintiff, First Midwest Bank ("First Midwest"), as successor-in-interest to Bridgeview Bank Group ("Bridgeview"), by and through its attorneys, for its Complaint against Leo J. Govoni ("Govoni") and Mark Berlin ("Berlin"), states as follows:

### PARTIES, JURISDICTION AND VENUE

1.    First Midwest is an Illinois banking corporation that maintains its principal place of business in Chicago, Illinois. First Midwest is a citizen of Illinois.

2.    On or about May 10, 2019, First Midwest acquired Bridgeview, a former Illinois banking corporation, *via* merger, and First Midwest is now the successor-in-interest to Bridgeview.

3.    Govoni is an individual that maintains his residence in Clearwater, Florida, and thus, he is a citizen of Florida.

4.    Berlin is an individual that maintains his residence in Minnesota, and thus, he is a citizen of Minnesota.

5.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the action is between citizens of different States.

6.     Venue is proper under 28 USCS §1441(a) in Illinois because the Complaint arises out of transactions occurring in Chicago, Illinois, which is within the Northern District of Illinois, Eastern Division.

7.     This court should apply the substantive law of the State of Illinois in this case. Illinois has the most significant relationship to First Midwest's claims because this dispute arises out of misrepresentations that occurred in Chicago, Illinois, the place of injury was in Chicago, Illinois, and, at all relevant times, Bridgeview's principal place of business was in Illinois.

## FACTUAL ALLEGATIONS

### A.     Litigation Financing

8.     As more fully discussed below, Govoni and Berlin are individuals involved in the business of litigation financing through several interconnected business entities that, at all relevant times, they jointly owned and/or controlled (and, on information and belief, still own and control).

9.     Litigation financing companies provide funds to plaintiffs involved in lawsuits by purchasing an interest in the lawsuits. Many, but not all, of the cases in which an interest is purchased are personal injury cases filed by individual plaintiffs. The plaintiffs in those cases enter into contracts with litigation finance companies to use the funds to pay for litigation costs (*i.e.,* expert fees and court reporter expenses) and personal expenses during the pendency of the litigation.

10.     Litigation finance deals are referred to the litigation finance company by plaintiffs' lawyers throughout the country. The purchases themselves are evidenced by written agreements (the "Finance Contracts"), pursuant to which, among other things, the plaintiffs agree that they will pay the litigation finance company a portion of the proceeds received from any successful resolutions (whether through settlement or favorable outcome after trial) (the "Favorable

Resolution Proceeds") in the cases in which they are involved. Typically, the Finance Contracts are non-recourse such that the only source of payment to the litigation finance company is the Favorable Resolution Proceeds, if any are obtained.

**B.    Govoni's and Berlin's Related Entities.**

11.    Govoni is the principal and sole managing member of Boston Finance Group, LLC ("Boston Finance"), a Florida limited liability company that maintains its principal place of business in Clearwater, Florida. Boston Finance was, at all relevant times, the parent company of BFG Investment Holdings, LLC ("BFG").

12.    BFG is a Delaware limited liability company, with its principal place of business in Clearwater, Florida. BFG was, at all relevant times, a company involved in litigation financing, and a wholly owned subsidiary of Boston Finance.

13.    Boston Finance was, at all relevant times, the managing member of BFG.

14.    Berlin, VF Finance, LLC, and Boston Finance are the principal members of Prospect Funding Holdings, LLC ("Prospect Holdings"), a Florida limited liability company, with its principal place of business in Minneapolis, Minnesota. Boston Finance is the managing member of Prospect Holdings, which was, at all relevant times, a company involved in litigation financing.

15.    Berlin is also a member, together with Prospect Holdings, and the manager of Prospect Funding Partners, LLC ("Prospect Partners"), a Florida limited liability company. At all relevant times, Prospect Partners acted as the originator and servicer for the portfolio of Finance Contracts that are owned by Prospect Holdings. Berlin is the only individual authorized to act on behalf of Prospect Partners.

16.    Govoni and Berlin met in 2011 and began working together in the litigation financing business. As will be described more fully below, not long after they went into business

3

together, Govoni and Berlin concocted a scheme to defraud other entities, including Bridgeview, to invest in a portfolio of Finance Contracts that Prospect Holdings made to various plaintiffs throughout the country.

**C.** **The Revolving Loan**

17.    On or about May 20, 2011, Boston Finance extended a revolving loan (the "Revolving Loan") in the maximum principal amount of $8,000,000.00 to Prospect Holdings. The Revolving Loan is evidenced by, *inter alia*, a Revolving Loan Agreement (the "Loan Agreement"), as it may have been amended and/or modified from time to time, between Boston Finance and Prospect Holdings, dated as of May 20, 2011 (A true and accurate copy of the Loan Agreement is attached hereto as **Exhibit 1**).[1] The Revolving Loan is also evidenced by a promissory note executed by Prospect Holdings in favor of Boston Finance dated as of May 20, 2011 (the "Revolving Note"). (A true and accurate copy of the Revolving Note is attached hereto as **Exhibit 2**).

18.    At some point, as part of a restructure of Govoni's and Berlin's litigation finance entities, Boston Finance assigned its interest in the Revolving Loan to BFG, which became the Lender under the Revolving Loan. (*See* Amendment to Loan Agreement  (July 1, 2014), a true and accurate copy of which is attached hereto as **Exhibit 3**).

19.    The Loan Agreement and the Revolving Note were modified and amended several times thereafter. On January 27, 2016, the Loan Agreement and the Revolving Note were modified to increase the limit of the line of credit to Prospect Holdings to $20,000,000.00. (*See* Seventh

---

[1]    The Loan Agreement was executed by John Fernando, the President of Boston Finance (the Lender under the Loan Agreement) in 2011. Conclusively demonstrating the interconnectedness of Govoni and Berlin's litigation finance companies, John Fernando also signed the Loan Agreement on behalf of Prospect Holdings, the Borrower under the Loan Agreement.

Amendment to Loan Agreement, a true and accurate copy of which is attached hereto as **Exhibit 4**).

20.     The purpose of the Revolving Loan was to allow Prospect Holdings to use the borrowed funds to enter into Finance Contracts with plaintiffs throughout the country. In theory, because the Finance Contracts would generate returns in the form of Favorable Resolution Proceeds that were far higher than the interest rate under the Revolving Loan, Prospect Holdings should have been able to generate sufficient revenue to service the Revolving Loan, even if, as expected, not all of the cases that supported the Finance Contracts generated Favorable Resolution Proceeds.

21.     In reality, however, Govoni and Berlin knew that Prospect Holdings could never generate enough revenue from the Finance Contracts to repay the Revolving Loan for several reasons, including, but not limited to, the fact that contrary to the terms of the Finance Contracts, the plaintiffs often refused to pay Prospect Holdings the Favorable Resolution Proceeds after their cases resolved favorably.[2] So they engaged in a scheme to defraud other investors, including Bridgeview, to purchase participation interests in the Revolving Loan so that BFG would not own any of the Revolving Loan, but would only earn fees for servicing it. This would allow Govoni to draw a hefty salary from BFG, and Berlin from Prospect Holdings and Prospect Partners, while others assumed the risk that Prospect Holdings would not repay the Revolving Loan in full, which they knew would almost surely happen.

---

[2]     There are other reasons as well. One is that, as Govoni and Berlin knew, it was highly unlikely that enough of the cases that supported the Revolving Loan would generate a sufficient amount of Favorable Resolution Proceeds to sustain the operations of Prospect Holdings and Prospect Partners and to repay the Revolving Loan (even if all of the plaintiffs actually paid the Favorable Resolution Proceeds to Prospect Holdings after the successful resolutions of their cases).

**D.** __BFG's Participation in the Revolving Loan__.

22.    Between the origination of the Revolving Loan in 2011 and the end of 2015, Prospect Holdings, as part of the fraudulent scheme created by Govoni and Berlin, entered into hundreds of Finance Contracts with plaintiffs throughout the country.

22.    In December, 2015, BFG sold a portion of its interest (on information and belief, a $5,000,000.00 interest) in the Revolving Loan to Arena Finance National, LLC ("Arena"), which became the first victim in the fraudulent scheme concocted by Govoni and Berlin. Arena has filed suit against BFG, Boston Finance and Prospect Holdings for, among other claims, fraud in State Court in Florida, and that case, styled as *Arena Finance National, LLC v. BFG Investment Holdings LLC et. al.*, Case Number 20-CA-002356, remains pending as of the filing of this Complaint.

### (1)    Preliminary Negotiations with Bridgeview

23.    On or about August 26, 2016, Govoni and Berlin met with John Benskoke, Brian Griffin, Peter Haleas and Mark Peterson, representatives from Bridgeview, in Chicago to discuss Bridgeview's potential participation in the Revolving Loan.

24.    During this initial meeting, and in the subsequent discussions with Bridgeview, Govoni and Berlin represented that the Revolving Loan was sound and fully-supported by the potential Favorable Resolution Proceeds in the cases in which Prospect Holdings had invested. And, as part of their fraudulent scheme, BFG attempted to convince Bridgeview to purchase all of BFG's remaining interest in the Revolving Loan.

25.    In particular, on or about September 7, 2016, in a letter that followed an in person meeting with Bridgeview, Govoni offered to "assist [Bridgeview] with building an attorney lending platform using resources already in place at [BFG] and [Prospect Holdings]." (*See*

September 7, 2016, Letter from Govoni to Bridgeview's Representatives (the "September 7, 2016 Letter") a copy of which is attached hereto as **Exhibit 5**).

26.     In the September 7, 2016 Letter, Govoni offered several purchase options to Bridgeview, but the primary one was to purchase BFG's entire interest in the Revolving Loan for a lump sum of $8,856,458.54, at six percent (6%) interest rate, with forty (40) monthly payments of $75,000.00, with a final payment at the end of that term. *(Id.)*

27.     In the September 7, 2016 Letter, Govoni also represented that investing in Revolving Loan offered "immediate and significant positive cash flow." *(Id.)*

### (2)     The Due Diligence Materials Sent to Bridgeview

28.     In order for Bridgeview to evaluate whether it should participate in the Revolving Loan, Berlin, with Govoni's knowledge, provided Bridgeview with a variety of financial information and materials. Govoni was aware of the fact that Bridgeview would be relying on the information and materials provided by Berlin in deciding whether to invest in the Revolving Loan and to purchase all or a portion of the Revolving Loan.

29.     On or about December 16, 2016, Berlin transmitted to Bridgeview the most important piece of financial information for due diligence: a spreadsheet containing a summary of all of the Finance Contracts that Prospect Holdings had entered into with plaintiffs with the proceeds of the Revolving Loan as of December 1, 2016 (the "December 2016 Portfolio Summary"). The December 2016 Portfolio Summary contained, among other things, the following information for each Finance Contract: the name of each plaintiff with whom/which Prospect Holdings entered into a Finance Contract, and thus (allegedly) had a pending case that supported the Revolving Loan (column A); the date that the Finance Contract was entered into with the plaintiff (column C); the aggregate amount of each investment in the case by Prospect Holdings

(column D); the date that Prospect Holdings estimated that the case would resolve (column G); and Prospect Holdings' estimate of the amount of Favorable Resolution Proceeds of the case as of the estimated resolution date (column H). (*See* December 2016 Portfolio Summary, a true and accurate copy of which is attached hereto as **Exhibit 6**).

30.     The most critical information contained in the December 2016 Portfolio Summary for Bridgeview, and which most directly influenced Bridgeview's participation in the Revolving Loan, was contained in Column H of the December 2016 Portfolio Summary because it identified Prospect Holdings' estimate of the amount of Favorable Resolution Proceeds that Prospect Holdings expected to receive from the resolution of each case filed by a plaintiff who/that entered into a Finance Contract with Prospect Holdings (hereinafter referred to as the "Estimated Resolution Value").

31.      The December 2016 Portfolio Summary stated that Prospect Holdings had, as of that time, outstanding litigation finance contracts with 725 plaintiffs, and that the aggregate Estimated Resolution Value of the pending cases filed by those plaintiffs was $25,252,011.00. (*See* **Ex. 6**).

32.     The December 2016 Portfolio Summary thus reflected that the aggregate Estimated Resolution Value of the pending cases was more than sufficient to support the Revolving Loan. The outstanding amount that Prospect Holdings borrowed from BFG under the Revolving Loan as of December, 2016, was approximately $13,961,385.00, and the aggregate Estimated Resolution Value of the cases that had been invested in with the proceeds of the Revolving Loan was over $11,000,000.00 greater than that figure. Thus, the "loan value" of the Revolving Loan appeared to be about 55%.

33.     Based on the information in the December 2016 Portfolio Summary provided by Berlin, with Govoni's knowledge and direction, Bridgeview had a legitimate reason to believe that its participation in the Revolving Loan was a justified and sound investment decision.

34.     On information and belief, sometime after January 4, 2017, Berlin, with Govoni's knowledge, provided Bridgeview with an updated Portfolio Summary (the "January 2017 Portfolio Summary") (*See* January 4, 2017 Portfolio Summary, a true and accurate copy of which is attached hereto as **Exhibit 7**). In the January 2017 Portfolio Summary, the number of cases decreased to 695, thus, presumably, reflecting that a few cases had resolved in December, 2016. Berlin increased the Estimated Resolution Value of 140 of the 695 cases from the December 2016 Portfolio Summary, which resulted in an increase in the aggregate Estimated Resolution Value of those cases by about $3,000,000.00, to $28,537,010.00. This provided further inducement to Bridgeview to participate in the Revolving Loan, as the loan to value of the Revolving Loan appeared to be over 50%.

35.     As will be discussed more fully below, however, the December 2016 Portfolio Summary and the January 2017 Portfolio Summary were materially fraudulent. Many of the cases listed on those two Portfolio Summaries had already been resolved prior to December, 2016 (*i.e.,* they were no longer pending), and thus should not have been listed on either of them. And, as Berlin later admitted (*see infra* ¶ 45), the Estimated Resolution Value of several of the larger cases on each of those two Portfolio Summaries were intentionally and dramatically overstated.

**(3)      Bridgeview Enters into the Participation Agreement.**

36.     Relying on the foregoing representations, on or about January 25, 2017, Bridgeview purchased from BFG an undivided thirty-six percent (36%) ownership interest in the Revolving Loan for $5,000,000.00, pursuant to the terms of a Participation Agreement (the "Participation

Agreement"). (A true and accurate copy of the Participation Agreement is attached hereto as **Exhibit 8**). Pursuant to the Participation Agreement, Bridgeview was to receive principal payments made under the Revolving Loan *pari passu* (consistent with Bridgeview's Participating Interest), and interest amounts received under the Revolving Loan in accordance with Bridgeview's "Buyer's Interest Share," as that term is defined in the Participation Agreement.

37.     Although the Participation Agreement contains a choice-of-law provision stating that Florida law will apply to any disputes related to the Participation Agreement, this dispute is not subject to that choice-of-law provision because First Midwest does not rely on the Participation Agreement as evidence of Govoni's and Berlin's fraudulent misrepresentations and omissions at issue in this case.[3] Instead, as discussed in this Complaint, First Midwest's fraud claims asserted against Govoni and Berlin are predicated on the misrepresentations and omissions made in the Portfolio Summaries and other due diligence materials, which are outside of and distinct from any representations made by Boston Finance in the Participation Agreement.

38.     Contemporaneously with the execution of the Participation Agreement, Govoni executed a personal guaranty (the "Guaranty") in favor of Bridgeview and guaranteed the receipt of up to $1,000,000.00 of the amount due to Bridgeview under the Loan Agreement and the Revolving Loan. (A true and accurate copy of the Guaranty is attached hereto as **Exhibit 9**).

39.     After the execution of the Participation Agreement, Govoni and Berlin were well on their way to divesting BFG of any ownership of the Revolving Loan. As of the end of January,

---

[3]     *See Medline Industries Inc. v. Maersk Medical Ltd.*, 230 F. Supp. 2d 857, 863 (N.D. Ill. 2002) (stating that a fraudulent inducement claim is not considered to be dependent upon the contract and, therefore, is not subject to the choice-of-law clause, unless the allegedly fraudulent statements were made in the contract itself).

2017, BFG had sold at least $10,000,000.00 of the approximately $13,000,000.00 that was then outstanding under the Revolving Loan.[4]

### E. Events Following the Execution of the Participation Agreement

40.     After the execution of the Participation Agreement, Berlin, with Govoni's knowledge, continued to send Portfolio Summaries to Bridgeview.

41.     On or about February 8, 2017, Berlin sent Bridgeview a Portfolio Summary ("February 2017 Portfolio Summary"), which stated that there were outstanding Finance Contracts with 661 plaintiffs with cases supporting the Revolving Loan (thus indicating that 34 cases resolved in one fashion or another during the prior month), with an aggregate Estimated Resolution Value of $27,778,166.00. (*See* February 2017 Portfolio Summary, a true and accurate copy of which is attached hereto as **Exhibit 10**).

42.     On or about March 6, 2017, Berlin sent Bridgeview another Portfolio Summary ("March 2017 Portfolio Summary"), which stated that there were outstanding Finance Contracts with 636 plaintiffs with cases supporting the Revolving Loan (thus indicating that 25 cases resolved one way or another in the prior month) with an aggregate Estimated Resolution Value of $27,211,973.00. (*See* March 2017 Portfolio Summary, a true and accurate copy of attached hereto as **Exhibit 11**).

### (1) The April 30, 2017 Portfolio Summary

43.     Unlike the February and March Portfolio Summaries, which listed an aggregate Estimated Resolution Value of the cases in excess of $27,000,000.00, on or about May 5, 2017, Berlin sent Bridgeview an updated Portfolio Summary with information on the cases supporting

---

[4]     Discovery in this case will reveal whether BFG was able to sell the remainder of its ownership interest in the Revolving Loan. On information and belief, Berlin, directly or indirectly, also owns a small portion of the Revolving Loan.

the Revolving Loan as of April 30, 2017 (the "April 2017 Portfolio Summary"), which showed a dramatic decrease in the aggregate Estimated Resolution Value of those cases - the aggregate estimate was now only $19,434,170.00. (*See* April 2017 Portfolio Summary, a true and accurate copy of which is attached hereto as **Exhibit 12**).

44.     As such, on May 5, 2017, Bridgeview learned, for the very first time, that the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan ($19,434,170.00) was less than the maximum availability under the Revolving Loan ($20,000,000.00). Indeed, between January, 2017 and April 2017, Berlin's and Govoni's estimate of the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan decreased by $8,817,841.00, or about 31%.[5] First Midwest's claims against Govoni and Berlin thus accrued, at the earliest, on May 5, 2017.

45.     Bridgeview was understandably alarmed when it received the April 2017 Portfolio Summary. When asked to explain the discrepancy between the aggregate Estimated Resolution Value of the cases between the March and April 2017 Portfolio Summaries, Berlin sent an email to Bridgeview stating as follows:

> "[Berlin and Govoni] did a 'hard' mark on some of the lager files. The $$$ amounts owned on a relative basis were most likely more than what could have recovered. Underlying claims were fine, but we decided to cap overall values and err on the conservative side."

(*See* Email Correspondence between Berlin and John Benskoke (May 5, 2017), a true and accurate copy of which is attached hereto as **Exhibit 13**). This email constitutes a blatant admission that Govoni and Berlin knowingly and fraudulently inflated the Estimated Resolution Value of the

---

[5]     In fact, as will be discussed below, the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan was actually far less than $19,434,170.00 because many of the cases on each of the Portfolio Summaries had already been resolved before December 2016.

cases listed on the December 2016 and January 2017 Portfolio Summaries, and then, for the first time, included the allegedly more accurate Estimated Resolution Value of the cases in the April 2017 Portfolio Summary.

### (2)    Bridgeview Requests an Audit

46.    After learning of the dramatic decrease in the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan, Bridgeview requested, as was its right under the Participation Agreement, permission to conduct a field audit and an examination of BFG's records relating to the cases on the various Portfolio Summaries.

47.    Govoni and Berlin refused to allow Bridgeview to conduct a comprehensive audit of the cases on the Portfolio Summaries. The reason is obvious – had Bridgeview been permitted to conduct an audit in 2017, it would have uncovered their fraudulent scheme way back then.

### (3)    Prospect Holdings Defaults Under the Revolving Loan

48.    It was a forgone conclusion that Prospect Holdings would eventually default under the Revolving Loan. Indeed, Prospect Holdings stopped making monthly payments to BFG sometime in early 2019. Prospect Holdings also failed and refused to pay the entire outstanding balance due under the Revolving Note after it matured on December 31, 2019.

49.    BFG has taken no action to attempt to recover the amounts due under the Revolving Loan from Prospect Holdings after the maturity default. This should come as no surprise because the principals of BFG (Berlin and Govoni) are the same as those of Prospect Holdings.

50.    First Midwest (the successor-in-interest to Bridgeview) is currently owed over $4,300,000.00 on its participation interest in the Revolving Loan.

**(4)** **Bridgeview's Lawsuit Against BFG**

51.     In light of Govoni's and Berlin's unreasonable refusal to allow Bridgeview access to the information regarding the cases contained in the Portfolio Summaries, on or about June 3, 2019, First Midwest, as a successor-in-interest to Bridgeview, filed a lawsuit against BFG in the Middle District of Florida alleging causes of action for breach of the Participation Agreement and fraud. (*See First Midwest Bank v. BFG Investment*, Case No. 8:19-cv-01339-TPB-AEP, Dkt.1.) (the "Florida Lawsuit"). To date, the Florida Lawsuit remains pending and undetermined.

52.     During discovery in the Florida Lawsuit, BFG refused to provide Bridgeview with any information related to most of the cases listed on the December 2016 and the January 2017 Portfolio Summary.[6]

53.     Because BFG refused to provide the foregoing information related to the cases on the Portfolio Summaries, counsel for First Midwest began a nationwide case search of the dockets for the cases listed in the December 2016 Portfolio Summary to determine their status.

54.     During the course of the investigation, as will be more fully explained below, First Midwest began to discover that much of the information regarding the cases contained in the December 2016 Portfolio Summary was fraudulent. As such, on or about August 20, 2021, First Midwest requested leave in the Florida Lawsuit to file an amended complaint to include causes of action for fraud against Govoni and Berlin. (Florida Lawsuit, Dkt. 52).

55.     The Court in the Florida Lawsuit denied First Midwest's request for leave to file the amended complaint because it was made after the deadline for filing amended pleadings had

---

[6]     Boston Finance and Prospect Holdings contended in discovery in the Florida Lawsuit that they do not know the jurisdictions or the case numbers of any of the cases listed on the Portfolio Summaries. If this is true, then this is powerful evidence that the Revolving Loan and the Portfolio Summaries are shams, because if Govoni and Berlin do not even know where the cases on the Portfolio Summaries are pending, how could they create, or evaluate if someone else (*i.e,* the plaintiffs' attorneys) created, the Estimated Resolution Value of any of the cases.

expired. (*Id.* Dkt 64). The Court, however, noted that First Midwest could, if it so choose, file a separate lawsuit against Govoni and Berlin based on the information that it discovered during its counsel's investigation.

**F.**     **The Material Misrepresentations in the December 2016 Portfolio**

56.     As indicated above, First Midwest's counsel engaged in a nation-wide search of the dockets of the cases listed on the December 2016 Portfolio Summary. The search was incredibly difficult to conduct because the December 2016 Portfolio Summary did not include the case number or jurisdiction of any of the cases listed thereon, and BFG refused to produce any of that information in discovery in the Florida Lawsuit. As such, the search had to be conducted by the name of each of the plaintiffs, which made it impossible to locate cases where the plaintiffs had a common name (*i.e.*, Johnson, Smith, etc.).

57.     Notwithstanding the difficulty of the search, out of the 725 cases on the December 2016 Portfolio Summary, 270 dockets were located. Out of those cases, it was discovered that 43 of the cases, or 16% of them, with an aggregate Estimated Resolution Value of $3,707,365.00, had already been resolved prior to December, 2016, and thus, should never had been on the December 2016 Portfolio Summary. A detailed description of those fraudulent cases on the December 2016 Spreadsheet is set forth below[7]:

    a.     The case filed by Kenneth Addison (listed as No. 11 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $11,968.00, with an estimated resolution date of March 31, 2017, when in fact the case was settled and dismissed with prejudice on April 7, 2015 (*see* Notice of Settlement and Order of Dismissal, true and accurate copies of which are attached hereto as **Group Exhibit 14**).

    b.     The case filed by Ebony Anderson (listed as No. 48 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $7,747.00, with an

---

[7]     Although the December 2016 Portfolio Summary lists 725 plaintiffs who entered into Finance Contracts with Prospect Holdings, the December 2016 portfolio Summary contains 2100 rows because several rows with different entries are listed under the names of each plaintiff. For easy reference, each case will be referred to by the plaintiff's name and the row number corresponding thereto.

estimated resolution date of June 30, 2018, when in fact the case was settled and a final judgment was entered in the case on March 24, 2016 (*see* Judgment Order by Consent, a true and accurate copy of which is attached hereto as **Exhibit 15**).

c.     The case filed by Barry Barber (listed as No. 113 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $25,417.00, with an estimated resolution date of June 30, 2018, when in fact the case was dismissed on November 4, 2016 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 16**).

d.     The case filed by Carol Bittner (listed as No. 188 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $16,320.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed with prejudice on July 19, 2016 (*see* Dismissal Order and Final Disposition Sheet, true and accurate copies of which are attached hereto as **Group Exhibit 17**).

e.     The case filed by Alphnia Boone (listed as No. 208 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $5,019.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed with prejudice on April 15, 2015 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 18**).

f.     The case filed by Betty Borrero (listed as No. 210 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $9,460.00, with an estimated resolution date of March 31, 2017, when in fact the case was dismissed and judgment was entered in favor of the defendant on January 7, 2016 (*see* Decision and Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 19**).

g.     The case filed by Keri-Ann Brown (listed as No. 240 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $9,010.00, with an estimated resolution date of December 31, 2017, when in fact the case was settled and dismissed with prejudice on July 27, 2015 (*see* Notice of Settlement and Order of Dismissal, true and accurate copies of which are attached hereto as **Group Exhibit 20**).

h.     The case filed by Jason Capolupo (listed as No. 292 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $54,449.00, with an estimated resolution date of December 31, 2017, when in fact the case was discontinued by agreement of the parties on June 2, 2016 (*see* Stipulation of Discontinuance, a true and accurate copy of which is attached hereto as **Exhibit 21**).

i.     The case filed by Leslie Cucinotta (listed as No. 381 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $7,344.00, with an estimated resolution date of December 31, 2017, when in fact the case was dismissed on July 20, 2016 (*see* Dismissal Notice, a true and accurate copy of which is attached hereto as **Exhibit 22**).

j.      The case filed by Anita Edwards (listed as No. 487 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $25,528.00, with an estimated resolution date of December 31, 2017, when in fact the case was settled and dismissed with prejudice on September 27, 2016 (*see* Dismissal Order, a true and accurate copy of which is attached hereto as **Exhibit 23**).

k.      The case filed by Diana Fennell (listed as No. 543 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $162,590.00, with an estimated resolution date of June 30, 2017, when in fact the case was settled and dismissed on October 29, 2014 (*see* Notice of Settlement and Dismissal Order, true and accurate copies of which are attached hereto as **Group Exhibit 24**).

l.      The case filed by Salvador Figueroa (listed as No. 552 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $59,570.00, with an estimated resolution date of September 30, 2017, when in fact the case was dismissed with prejudice on March 15, 2016 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto was **Exhibit 25**).

m.      The case filed by Rosie Finley (listed as No. 554 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $106,163.00, with an estimated resolution date of December 31, 2016, when in fact the case was dismissed on August 4, 2014 (*see* Notice of Voluntary Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 26**).

n.      The case filed by Brenda Gallagher (listed as No. 662 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $8,432.00, with estimated resolution date of December 31, 2016, when in fact the case was dismissed on August 26, 2016 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 27**).

o.      The case filed by Bruce Gaines (listed as No. 659 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $14,824.00, with an estimated resolution date of December 31, 2017, when in fact the case was dismissed on October 31, 2016 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 28**).

p.      The case filed by Yahkyma Goode (listed as No. 712 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $13,653.00, with an estimated resolution date of September 30, 2017, when in fact the case was dismissed with prejudice on October 17, 2016 (*see* Stipulation of Dismissal with Prejudice, a true and accurate copy of which is attached hereto as **Exhibit 29**).

q.      The case captioned "Harris vs. Samantha Jade, Jon" (listed as No. 780 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $123,200.00, with an estimated resolution date of June 30, 2017, when in fact the case was

dismissed on October 28, 2013 (*see* Order on Motion to Dismiss, a true and accurate copy of which is attached hereto as **Exhibit 30**).

r.  The case filed by Zina Hunt (listed as No. 877 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $33,654.00, with an estimated resolution date of December 31, 2017, when the case was resolved by entry of a judgment on an award of arbitration against the defendant on July 1, 2013 (*see* Notice of Judgment, a true and accurate copy of which is attached hereto as **Exhibit 31**).

s.  The case filed by Deedra Hunter (listed as No. 879 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $117,411.00, with an estimated resolution date of December 31, 2017, when Ms. Hunter filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court for the District of Nevada on September 29, 2016 (*see* Suggestion of Bankruptcy, a true and accurate copy of which is attached hereto as **Exhibit 32**).

t.  The case filed by Daniel Hurtado (listed as No. 884 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $378,358.00, with an estimated resolution date of December 31, 2017, when in fact the case was dismissed with prejudice on June 25, 2014 (*see* Dismissal Order, a true and accurate copy of which is attached hereto as **Exhibit 33**).

u.  The case filed by Jack Kowalski (listed as No. 1009 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $15,540.00, with an estimated resolution date of June 30, 2017, when in fact the case dismissed with prejudice on June 9, 2015 (*see* Stipulated General Judgment of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 34**).

v.  The case filed by Larry Linkous (listed as No. 1051 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $7,344.00, with an estimated resolution date of December 31, 2017, when in fact the case was dismissed on November 22, 2016 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 35**).

w.  The case filed by Pamela Maslowski (listed as No. 1146 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $23,018.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed on August 4, 2015 (*see* Order for Dismissal and Judgment, true and accurate copy of which are attached hereto as **Exhibit 36**).

x.  The case filed by Ronald McClelland (listed as No. 1165 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $19,040.00, with an estimated resolution date of March 31, 2018, when in fact the case was dismissed on October 9, 2015 (*see* Stipulation of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 37**).

y.       The case filed by Misti McKinney (listed as No. 1187 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $75,331.00, with an estimated resolution date of June, 30, 2017, when in fact the case was settled and dismissed with prejudice on October 2, 2015 (*see* Consent Order of Dismissal with Prejudice, a true and accurate copy of which is attached hereto as **Exhibit 38**).

z.       The case filed by Tamara Norwood (listed as No. 1307 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $30,038.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed on March 2, 2016 (*see* Stipulation of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 39**).

aa.       The case filed by Shannon Paiz (listed as No. 1345 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $85,868.00, with an estimated resolution date of December 31, 2017, when in fact the case was settled and dismissed on August 26, 2015 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 40**). Following the dismissal, Ms. Paiz did not pay Prospect Holdings. Consequently, Prospect Holdings sued the attorney representing Mr. Paiz, and on December 28, 2016, collected $50,000.00 pursuant to a settlement. (*See* Check from Callagy Law to Prospect Holdings, attached hereto as **Exhibit 41**). The December 2016 Portfolio Summary contained no indication that the case was resolved and had no Estimated Resolution Value as of December 1, 2016, or that the attorney for Ms. Paiz did not pay the Favorable Resolution Proceeds due to Prospect Holdings under the Finance Contract, or that Prospect Holdings initiated a lawsuit to collect the Favorable Resolution Proceeds due thereunder. [8]

bb.       The case filed by Teresa Parmer (listed as No. 1360 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $68,785.00, with an estimated resolution date of December 31, 2017, when in fact the case dismissed on August 19, 2016 (*see* Order of Dismissal and Inactive Docket Order, true and accurate copies of which are attached hereto as **Group Exhibit 42**).

cc.       The case filed by Sherry Pathak (listed as No. 1370 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $36,968.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed on February 26, 2015 (*see* Orders of Dismissal, true and accurate copies of which are attached hereto as **Group Exhibit 43**).

dd.       The case filed by Luis Maria Recalde (listed as No. 1465 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $12,648.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed on

---

[8]       Not only did Berlin include Ms. Paiz's case on the December 2016 Portfolio Summary, but its Estimated Resolution Value was inexplicably and fraudulently increased to $449,635.00 on the April Portfolio Summary, after the case was dismissed and Prospect Holdings received the $50,000.00 in full settlement for the amount due under the Finance Contract.

August 19, 2014 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 44**).

ee.     The case filed by Shelley Ruffin (listed as No. 1544 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $22,440.00, with an estimated resolution date of September 30, 2017, when in fact the case dismissed on February 29, 2016 (*see* Nonsuit Order, a true and accurate copy of which is attached hereto as **Exhibit 45**).

ff.     The case filed by Sandra Sanders (listed as No. 1568 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $61,216.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed on July 9, 2014 (*see* Dismissal Order, a true and accurate copy of which is attached hereto as **Exhibit 46**).

gg.     The case filed by Ron Sands (listed as No. 1575 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $18,878.00, with an estimated resolution date of September 30, 2018, when in fact the case was dismissed with prejudice on November 18, 2016 (*see* Order of Dismissal with Prejudice, a true and accurate copy of which is attached hereto as **Exhibit 47**).

hh.     The case filed by McCall Segers (listed as No. 1605 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $5,555.00, with an estimated resolution date of December 31, 2016, when in fact the case was dismissed on November 29, 2016 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 48**).

ii.     The case filed by Sheila Session (listed as No. 1609 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $274,731.00, with an estimated resolution date of June 30, 2017, when in fact the case was dismissed with prejudice on or about July 9, 2014. Following the dismissal, Ms. Session did not pay Prospect Holdings, which filed suit against the attorney that represented Ms. Sessions in her personal injury case. (*See* Complaint filed by Prospect Holdings, a true and accurate copy of which is attached hereto as **Exhibit 49**). The December 2016 Portfolio Summary contained no indication that the case was resolved and had no Estimated Resolution Value as of December 1, 2016, or that Ms. Session did not pay the Favorable Resolution Proceeds due to Prospect Holdings under the Finance Contract, or that Prospect Holdings initiated a lawsuit to collect the Favorable Resolution Proceeds due thereunder.

jj.     The case filed by Alischa Stewart-Brown (listed as No. 1709 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $18,768.00, with an estimated resolution date of December 31, 2016, when in fact the case was dismissed on October 27, 2016 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 50**).

kk.     The case filed by Michael Sumrall (listed as No. 1755 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $100,300.00, with an estimated resolution date of September 30, 2017, when in fact the case was dismissed on September 16, 2015 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 51**).

ll.     *The City of Los Angeles v. Wells Fargo* (listed as No. 1779 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $1,000,000.00, with an estimated resolution date of December 31, 2017, when summary judgment was granted in favor of the defendant Wells Fargo on July 17, 2015 (*see* Order Granting Summary Judgment in favor of Wells Fargo, a true and accurate copy of which is attached hereto as **Exhibit 52**). Subsequently, the Ninth Circuit affirmed the district court's opinion. *City of Los Angeles v. Wells Fargo*, 691 Fed. Appx. 453, 455 (9th Cir. 2017).

mm.     The case filed by Gregory Tompkins (listed as No. 1818 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $53,840.00, with an estimated resolution date of September 30, 2017, when in fact the case was dismissed with prejudice on September 15, 2014 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 53**).

nn.     The case filed by Howard Vinson (listed as No. 1908 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $98,712.00, with an estimated resolution date of June 30, 2018, when Prospect Holdings sued Mr. Vinson on April 29, 2015, because Mr. Vinson did not pay Prospect Holdings, which thereafter initiated a lawsuit to collect the Favorable Resolution Proceeds due under the Finance Contract. (*see* Default Judgment Order and Order and Opinion of Dismissal, true and accurate copies of which are attached hereto as **Group Exhibit 54**). The December 2016 Portfolio Summary contained no indication that the case was resolved and had no Estimated Resolution Value as of December 1, 2016, or that Mr. Vinson did not pay the Favorable Resolution Proceeds due to Prospect Holdings under the Finance Contract, or that Prospect initiated a lawsuit to collect the Favorable Resolution Proceeds thereunder.

oo.     The case filed by James White (listed as No. 1193 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $85,800.00, with an estimated resolution date of March 31, 2017, when in fact the case was resolved pursuant to a jury verdict entered against the plaintiff and in favor of the defendant on September 23, 2016 (*see* Final Judgment Order, a true and accurate copy of which is attached hereto as **Exhibit 55**).

pp.     The case filed by Janay Wright (listed as No. 2086 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $69,686.00, with an estimated resolution date of December 31, 2017, when in fact the case was dismissed on July 12, 2013. (*See* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 56**).

qq.     The case filed by Angela Wright-Housen (listed as No. 2092 on the December 2016 Portfolio Summary) was falsely given an Estimated Resolution Value of $332,742.00, with an estimated resolution date of March 31, 2017, when in fact the case was dismissed on July 24, 2014 (*see* Order of Dismissal, a true and accurate copy of which is attached hereto as **Exhibit 57**). Following the dismissal, Ms. Wright-Housen did not pay Prospect Holdings, which thereafter initiated a lawsuit to collect the Favorable Resolution Proceeds due under the Finance Contract. (*Prospect Funding Holdings, LLC v. Saulter*, 2018 IL App (1st) 171277, ¶ 32). The December 2016 Portfolio Summary contained no indication that the case was resolved and had no Estimated Resolution Value as of December 1, 2016, or that Ms. Wright-Housen did not pay the Favorable Resolution Proceeds due to Prospect Holdings under the Finance Contract, or that Prospect initiated a lawsuit to collect the Favorable Resolution Proceeds thereunder.

58.     Using extrapolation, if 43, or 16%, of the 270 cases on the December 2016 Portfolio Summary that were located through the docket search had already been resolved prior to December, 2016, and the Estimated Resolution Value of those cases was $3,707,365.00, then discovery in this case will likely reveal that approximately 116 of the 725 cases, with an Estimated Resolution Value of approximately $10,009,886.00, on the December 2016 Portfolio Summary should never have been listed thereon because the cases were already resolved before December, 2016. This constitutes a blatant misrepresentation by Berlin, and an omission by Govoni, of material fact.

59.     In addition, as Berlin admitted in May, 2017 (*see supra* ¶ 45), the Estimated Resolution Value of many of the cases, especially the larger ones, was intentionally inflated on the December 2016 Portfolio Summary. Berlin reduced the Estimated Resolution Value of 17 large cases between the March 2017 Portfolio Summary and the April 2017 Portfolio Summary by $6,395,409.00, or 23.5%. The reason for the decrease was not that these 17 large cases were resolved favorably before the issuance of the April 2017 Portfolio Summary. In fact, on the April 2017 Portfolio Summary, Berlin removed 60 different other cases, presumably because they resolved in one fashion or another in March, 2017, and the aggregate Estimated Resolution Value of those cases was only $1,526,156.00.

60. Based on the foregoing data, which will be crystalized during discovery in this case, the aggregate Estimated Resolution Value of the cases on the December 2016 Portfolio Summary and the January 2017 Portfolio Summary was nowhere near $25,252,011.00, as was represented by Berlin, with Govoni's knowledge. Instead, the actual Estimated Resolution Value of the cases was no more than $15,000,000.00, and probably was even less than that figure.

61. Were all of the above not enough, Govoni and Berlin also knew that the litigation portfolio supporting the Revolving Loan had collection issues as early as October, 2016, because an increasing number of plaintiffs, after consultation with their counsel, were refusing to pay to Prospect Holdings the Favorable Resolution Proceeds due under the Finance Contracts after their cases were resolved (as evidenced by the fact that Prospect Holdings had to file lawsuits against several plaintiffs for non-payment (*see supra*, ¶¶ 57(aa); 57(ii); 57(nn); 57(qq)). But Govoni and Berlin falsely informed Bridgeview that their litigation portfolio contained merely a handful of cases with such collection issues, and that they had successfully implemented measures that mitigated these issues. This statement was intentionally false.

## COUNT I: FRAUD (INTENTIONAL MISREPRESENTATION AND OMISSIONS OF MATERIAL FACTS) (AGAINST BERLIN)

62. First Midwest restates, re-alleges and incorporates by reference paragraphs 1 through 61 of as though they were fully set forth herein.

63. Prior to the execution of the Participation Agreement, Berlin made numerous false representations, material misstatements of fact and material omissions of fact to Bridgeview (collectively, the "Misrepresentations") while under a duty to make full and accurate disclosure, including, but not limited to the following:

a)     Falsely represented to Bridgeview on the December 2016 Portfolio Summary that the portfolio of cases supporting the Revolving Loan was comprised of 725 cases, when at least 116 of those cases, with an Estimated Resolution Value of $10,009,886.00, had already been completed prior to December, 2016, and thus had no possible Estimated Resolution Value;

b)     Falsely represented to Bridgeview that, as of December, 2016, the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan was $25,252,011.00, and that in January, 2017, the aggregate Estimated Resolution Value of the cases was $28,537,010.00, when he admitted in April, 2017, that the aggregate Estimated Resolution Value of those cases was actually no more than $19,434,170.00, and in fact the Estimated Resolution Value of them was far less than that figure;

c)     Failed to disclose that many of the plaintiffs, after consultation with their attorneys, were refusing to pay to Prospect Holdings the Favorable Resolution Proceeds under the Finance Contracts relating to their cases after resolution thereof; and

d)     Otherwise made material omissions or misleading statements to Bridgeview for the purpose of inducing Bridgeview to invest in the Revolving Loan.

64.     The Misrepresentations made by Berlin were material and were made to induce Bridgeview to invest in the Revolving Loan and to enter into the Participation Agreement.

65.     The information contained in the December 2016 and January 2017 Portfolio Summaries was materially false, as detailed above, and thus constitute material misrepresentations and omissions of fact.

24

66.     Bridgeview had no knowledge as to the falsity of the Misrepresentations.

67.     Berlin knew at all times that the Misrepresentations were false, and he made them specifically to deceive Bridgeview to induce Bridgeview to invest in the Revolving Loan.

68.     Berlin knew at all times that Bridgeview would rely upon the accuracy and completeness of the information supplied by Berlin in the December 2016 and January 2017 Portfolio Summaries in its decision to invest in the Revolving Loan and to execute the Participation Agreement.

69.     Berlin knew that Bridgeview would be reviewing the December 2016 and January 2107 Portfolio Summaries, including, but not limited to, the number of cases that supported the Revolving Loan and the aggregate Estimated Resolution Value of those cases.

70.     Berlin had a duty to disclose accurate information to Bridgeview regarding the number of cases and the aggregate Estimated Resolution Value of them on the Portfolio Summaries.

71.     Bridgeview reasonably and justifiably relied upon the information supplied by Berlin, including the Misrepresentations, in executing the Participation Agreement and disbursing $5,000,000.00 to BFG.

72.     Bridgeview would not have entered into the Participation Agreement if it knew of the Misrepresentations.

73.     As a direct and proximate cause of the Misrepresentations, Bridgeview acted to its detriment by executing the Participation Agreement, and it has suffered damages in an amount in excess of $4,300,000.00.

WHEREFORE, Plaintiff, First Midwest Bank, as a successor-in-interest to Bridgeview Bank Group, prays for an entry of judgment in its favor and against the defendant, Mark Berlin, as follows:

a.      Damages in excess of $4,300,000.00 to be proven at trial;

b.      Punitive damages in an amount to be proven at trial; and

c.      Any such further relief as justice and equity may require.

## COUNT II: FRAUD (INTENTIONAL OMISSIONS OF MATERIAL FACTS)
### (AGAINST GOVONI)

74.     First Midwest restates, re-alleges and incorporates by reference paragraphs 1 through 73 of as though they were fully set forth herein.

75.     Prior to the execution of the Participation Agreement, Govoni made material omissions of fact (collectively, the "Omissions") while under a duty to make full and accurate disclosure, including, but not limited to the following:

a)      Failed to disclose to Bridgeview that the December 2016 Portfolio Summary, as transmitted by Berlin to Bridgeview, falsely stated that the portfolio of cases supporting the Revolving Loan was comprised of 725 cases, when at least 116 of those cases, with as aggregate Estimated Resolution Value of $10,009,886.00, had already been completed prior to December, 2016 and thus had no possible Estimated Resolution Value;

b)      Failed to disclose to Bridgeview that the December 2016 Portfolio Summary, as transmitted by Berlin to Bridgeview, falsely stated that, the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan was $25,252,011.00, and that as of January, 2017, the aggregate Estimate Resolution Value of the cases was $28,537,010.00, when Berlin admitted in April, 2017 that

26

the aggregate Estimated Resolution Value of those cases was no more than $19,434,170.00, and in fact the Estimated Resolution Value of them was far less than that figure;

c)      Failed to disclose that many of the plaintiffs, after consultation with their attorneys, were refusing to pay to Prospect Holdings the Favorable Resolution Proceeds under the Finance Contracts relating to their cases after resolution thereof; and

d)      Otherwise made material omissions or misleading statements to Bridgeview for the purpose of inducing Bridgeview to invest in the Revolving Loan.

76.     The Omissions made by Govoni were material and were made to induce Bridgeview to invest in the Revolving Loan and to enter into the Participation Agreement.

77.     The information contained in the December 2016 and January 2017 Portfolio Summaries was false, as detailed above, and thus constitute material misrepresentations and omissions of fact.

78.     In his capacity as a member of Prospect Holdings, Govoni knew or should have known that the information contained in the Portfolio Summaries related to the cases funded by Prospect Holdings and transmitted by Berlin to Bridgeview contained false representations of fact, and he failed to disclose to Bridgeview the falsity of the information contained therein.

79.     Bridgeview had no knowledge as to the falsity of the Omissions.

80.     Govoni knew at all times that the Misrepresentations were false, and that Berlin made them specifically to deceive Bridgeview for purposes of inducing Bridgeview to invest in the Revolving Loan, but Govoni failed to disclose to Bridgeview that the Misrepresentations were false.

81.  Govoni knew at all times that Bridgeview would rely upon the accuracy and completeness of the information supplied by Berlin in the December 2016 and January 2017 Portfolio Summaries in its decision to invest in the Revolving Loan and to execute the Participation Agreement.

82.  Govoni knew that Bridgeview would be reviewing the December 2016 and January 2017 Portfolio Summaries including, but not limited to, the number of cases that supported the Revolving Loan and the aggregate Estimated Resolution Value of them as supplied by Berlin.

83.  Govoni had a duty to disclose accurate information to Bridgeview regarding the number of cases and the aggregate Estimated Resolution Value of them listed in the Portfolio Summaries.

84.  Bridgeview reasonably and justifiably relied upon the information supplied by Berlin, with Govoni's knowledge, including the Omissions, in executing the Participation Agreement and disbursing $5,000,000.00 to BFG.

85.  Bridgeview would not have entered into the Participation Agreement if it knew of the Omissions.

86.  As a direct and proximate cause of the Omissions, Bridgeview acted to its detriment by executing the Participation Agreement, and it suffered damages in an amount in excess of $4,300,000.00.

WHEREFORE, Plaintiff, First Midwest Bank, as a successor-in-interest to Bridgeview Bank Group, prays for an entry of judgment in its favor and against the defendant, Leo Govoni, as follows:

a.  Damages in excess of $4,300,000.00 to be proven at trial;

b.  Punitive damages in an amount to be proven at trial; and

c.  Any such further relief as justice and equity may require.

28

## COUNT III: NEGLIGENT MISREPRESENTATION
### (AGAINST GOVONI AND BERLIN)

87.     First Midwest restates, re-alleges and incorporates by reference paragraphs 1 through 86 of as though they were fully set forth herein.

88.     Prior to the execution of the Participation Agreement, Berlin made numerous Misrepresentations, while were under a duty to make full and accurate disclosure, including, but not limited to, the following:

a)      Falsely represented to Bridgeview on the December 2016 Portfolio Summary that the portfolio of cases supporting the Revolving Loan was comprised of 725 cases, when at least 116 of those cases, with an Estimated Resolution Value of $10,009,886.00, had already been completed prior to December, 2016 and thus had no possible Estimated Resolution Value;

b)      Falsely represented to Bridgeview that, as of December, 2016, the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan was $25,252,011.00, and that as of January, 2017, the aggregate Estimated Resolution Value of the cases was $28,537,010.00, when in fact he admitted in April, 2017, that the aggregate Estimated Resolution Value of those cases was no more than $19,434,170.00, and in fact the Estimated Resolution Value of them was far less than that figure;

c)      Failed to disclose that many of the plaintiffs, after consultation with their attorneys, were refusing to pay to Prospect Holdings the Favorable Resolution Proceeds under the Finance Contracts relating to their cases after resolution thereof; and

29

d)      Otherwise made material omissions or misleading statements to Bridgeview for the purpose of inducing Bridgeview to invest in the Revolving Loan.

89.     Prior to the execution of the Participation Agreement, Govoni made material Omissions while under a duty to make full and accurate disclosure, including, but not limited to, the following:

a)      Failed to disclose to Bridgeview that the December 2016 Portfolio Summary, as transmitted by Berlin to Bridgeview, falsely stated that the portfolio of cases supporting the Revolving Loan was comprised of 725 cases, when at least 116 of those cases, with as aggregate Estimated Resolution Value of $10,009,886.00, had already been completed prior to December, 2016 and thus had no possible resolution value;

b)      Failed to disclose to Bridgeview that the December 2016 Portfolio Summary, as transmitted by Berlin to Bridgeview, falsely stated that, the aggregate Estimated Resolution Value of the cases supporting the Revolving Loan was $25,252,011.00, and that as of January, 2017, the aggregate Estimate Resolution Value of the cases was $28,537,010.00, when Berlin admitted in April, 2017 that the aggregate Estimated Resolution Value of those cases was no more than $19,434,170.00, and in fact the Estimated Resolution Value of them was far less than that figure;

c)      Failed to disclose that many of the plaintiffs, after consultation with their attorneys, were refusing to pay to Prospect Holdings the Favorable Resolution Proceeds under the Finance Contracts relating to their cases after resolution thereof; and

d)      Otherwise made material omissions or misleading statements to Bridgeview for the purpose of inducing Bridgeview to invest in the Revolving Loan.

90.     The Misrepresentation and Omissions were material and made to induce Bridgeview to invest in the Revolving Loan and to enter into the Participation Agreement.

91.     The information contained in the December 2016 and January 2017 Portfolio Summaries was materially false, as detailed above and thus constitute material misrepresentations and omissions of fact.

92.     Bridgeview had no knowledge of as to the falsity of the Misrepresentations and Omissions.

93.     Berlin and Govoni carelessly and negligently knew or should have known, or failed to ascertain the truth of the Misrepresentations made in the December 2016 and January 2017 Portfolio Summaries, including, but not limited to, the number of cases supporting the Revolving Loan and their aggregate Estimated Resolution Value.

94.     Berlin and Govoni knew at all times that Bridgeview would rely upon the accuracy and completeness of the information supplied by Berlin, with Govoni's knowledge, in the December 2016 and January 2017 Portfolio Summaries in its decision to invest in the Revolving Loan and to execute the Participation Agreement.

95.     Berlin and Govoni knew that Bridgeview would be reviewing the Portfolio Summaries including, but not limited to, the number of cases that supported the Revolving Loan and the aggregate Estimated Resolution Value of them as supplied by Berlin.

96.     At all relevant times, Berlin and Govoni were in the business of supplying information since they routinely solicited third parties to invest in their portfolio of litigation finance cases.

31

97.      Berlin and Govoni had a duty to disclose accurate information to Bridgeview regarding the number of cases and the aggregate Estimated Resolution Value of the cases listed in the December 2016 and January 2017 Portfolio Summaries.

98.      Bridgeview did reasonably and justifiably rely upon the information supplied by Berlin, with Govoni's knowledge, including the Misrepresentations and Omissions, in executing the Participation Agreement and disbursing $5,000,000.00 to BFG.

99.      Bridgeview would not have entered into the Participation Agreement if it knew of the Misrepresentations and Omissions.

100.     As a direct and proximate cause of the negligent Misrepresentations and Omissions, Bridgeview acted to its detriment by executing the Participation Agreement, and it suffered damages in an amount in excess of $4,300,000.00.

WHEREFORE, Plaintiff, First Midwest Bank, as a successor-in-interest to Bridgeview Bank Group, prays for an entry of judgment in its favor and against the defendants, Leo Govoni and Mark Berlin, as follows:

a.       Damages in excess of $4,300,000.00 to be proven at trial; and

b.       Any such further relief as justice and equity may require.

Dated: February 15, 2022                    Respectfully submitted,

                                            **FIRST MIDWEST BANK, AS SUCCESSOR-
                                            IN-INTEREST TO BRIDGEVIEW BANK
                                            GROUP**

                                            By:  */s/  William J. Serritella Jr.*
                                                 One of its Attorneys

William J. Serritella, Jr. (#6210001)
wserritella@taftlaw.com
Ioana M. Guset (#6309030)
iguset@taftlaw.com
Taft Stettinius & Hollister LLP
111 E. Wacker, Suite 2800
Chicago, Illinois 60601
(312) 527-4000

72195387v17